1

2

3

4

5

6

7              **IN THE UNITED STATES DISTRICT COURT**

8            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10   KENNETH E. ROBERTS, JR.,                    CASE NO. CV F 09-1634 LJO SMS

11              Plaintiff,                       **ORDER ON DEFENDANTS' MOTIONS TO**
                                                 **DISMISS AND COMPEL ARBITRATION**
12        vs.

13   SYNERGISTIC INTERNATIONAL, LLC;
     THE DWYER GROUP, LLC., and THE
14   DWYER GROUP, INC.,

15              Defendants.
     _____/
16

17                            **INTRODUCTION**

18        Defendants Synergistic International, LLC ("Synergistic"),  The Dwyer Group, LLC. ("Dwyer

19   LLC"), and The Dwyer Group, Inc. ("Dwyer INC") (collectively "Dwyer") (all defendants collectively

20   "defendants") move to compel arbitration and to dismiss plaintiff Kenneth E. Roberts, Jr.'s ("Mr.

21   Roberts'") complaint pursuant to the Federal Arbitration Act, 9 U.S.C. §1 et seq. and Fed. R. Civ. P.

22   12(b)(6).  In addition, Dwyer moves to dismiss Mr. Roberts' complaint for lack of personal jurisdiction,

23   pursuant to Fed. R. Civ. P. 12(b)(2).  Because of Dwyer's solicitous contacts with Mr. Roberts in Fresno

24   County, upon which this action is based, this Court finds limited personal jurisdiction over those parties.

25   As to the motion to compel arbitration, this Court finds that the court, rather than an arbitrator, may

26   determine arbitrability.  In addition, based on the parties lack of "meeting of the minds" on the forum,

27   choice of law, and jurisdiction clauses, this Court compels the parties to arbitrate pursuant to the valid

28   provisions of the arbitration agreement contained in Section 14 of the Franchise Agreement.

                                              1

## BACKGROUND

1

2    In July 2005, Mr. Roberts, a resident of Fresno County, California, was contacted by telephone

3    Andrew Baker ("Mr. Baker"), "an agent of Synergistic and Dwyer Group." Compl. ¶11.  Mr. Baker

4    invited Mr. Roberts to attend a Dwyer conference in Las Vegas to recruit him to be a new "Glass

5    Doctor" franchisee.  Synergistic operates as the franchisor for over one hundred Glass Doctor franchises

6    across the country.  Dwyer is the parent corporation of Synergistic.[1]  Compl. ¶9.

7    At the Las Vegas conference, Mr. Baker, Mark Dawson, and Robert Tunmire, who were

8    "representatives of defendants," stated that as a Glass Doctor franchisee, Mr. Roberts would have access

9    to a national customer base and would benefit from advantageous pricing on materials and national

10   advertising.   In addition, defendants told Mr. Roberts that by participating in the "Dwyer Group

11   'System,'" Mr. Roberts "would be able to move from automotive glass into the more lucrative business

12   of residential, commercial and industrial glass installation and repair, known in the trade as 'flat glass.'"

13   Compl. ¶14.  At the end of the Las Vegas Conference, defendants invited Mr. Roberts to the Glass

14   Doctor training in Waco, Texas.  Defendants informed Mr. Roberts that he must be prepared to pay for

15   his franchise territory at the conclusion of the Texas training.

16   Mr. Roberts attended defendants' five-day training in Waco, Texas beginning August 22, 2005.

17   "Much of the training was provided by the Dwyer Group officers, employees, and representatives, while

18   other parts of the training were provided by officers, employees, and representatives of Synergistic."

19   Compl. ¶16. At the Glass Doctor training in Texas, defendants made the same representations regarding

20   the benefits of the franchise that they made in Las Vegas.  Defendants also told Mr. Roberts that to

21   perform flat glass work in California on jobs that exceed $500, he would need to work under a license

22   issued by the California State Contractor's License Board ("CLB").  Defendants knew that Mr. Roberts

23   did not qualify for a CLB license and told Mr. Roberts that he could work under the license of Dan Mock

24   ("Mr. Mock"), an officer and representative of Synergistic. Compl. ¶¶19-23.

25

26       [1]According to the declaration of Parker Pieri, Director of Finance and Assistant Treasurer of Dwyer INC and Dwyer LLC, the entities relationships are as follows: Dwyer INC is the parent of Dwyer LLC; Dwyer LLC is the parent of non-party

27   Dwyer Franchising LLC; Dwyer Franchising LLC is the parent of a number of franchise companies, including Synergistic. Accordingly, Dwyer submits that Dwyer INC is the great-grandparent and Dwyer LLC is the grandparent corporation of

28   Synergistic.

1       On August 26, 2005, during the training in Waco, Mr. Roberts and Synergistic entered into a

2  Franchise Agreement. Compl. Exh. A.  Pursuant to the Franchise Agreement, Mr. Roberts was obliged

3  to pay Synergistic a franchise territory fee of $147,816 and start-up costs of $8,403.80.  In addition, Mr.

4  Roberts was obligated to pay an ongoing Franchise Service Fee, which was calculated as a percentage

5  of weekly gross sales.  Prior to executing the Franchise Agreement, defendants told Mr. Roberts that he

6  could finance the balance of the territory fee over five years at 10%; however, at the time the parties

7  entered into the Franchise Agreement, defendants presented Mr. Roberts with a Promissory Note and

8  Security Agreement that indicated an interest rate of 11%.  Compl. ¶33.  Defendants presented both the

9  Franchise Agreement and Security Agreement as "take it or leave it" propositions if Mr. Roberts desired

10  to proceed as a franchisee.  Mr. Roberts paid Synergistic 35% of the territory fee and his start-up costs,

11  for a total of $52,748.80, while at the Texas training. Compl. ¶¶ 31-32.

12       The Franchise Agreement contains a Dispute Resolution provision.  According to Article 14, the

13  Franchisor and Franchisee agree to utilize the procedures described in the Franchise Agreement for "any

14  controversy or claim arising out of or relating to this Agreement or the breach thereof or any transaction

15  embodied therein or related thereto (a 'Dispute')...before commencing any legal action." Franchise

16  Agreement ("FA"), 14(A).  Article 14 of the Franchise Agreement describes an initial process of

17  mediation to resolve a dispute between the parties.  The parties agreed that "if they are not able to

18  resolve the Dispute through the mediation process described above, the controversy shall be submitted

19  to binding arbitration." FA, 14(J).  The arbitration, *inter alia*, "shall be governed by the United States

20  Arbitration Act, 9 U.S.C. Section [sic] 1-16." *Id*.

21       The Franchise Agreement also includes a choice of law, jurisdiction, and venue provision.

22  Pursuant to Article 15(K), the parties agreed that the agreement "shall be governed by the internal laws

23  of the state of Texas, except to the extent governed ..by the Federal Arbitration Act (9 U.S.C. Section

24  1 et seq.)."  As to jurisdiction and venue, the Franchise Agreement provides:

25      AS TO ANY DISPUTE NOT SUBJECT TO BINDING ARBITRATION,
        FRANCHISEE SPECIFICALLY AGREES THAT ANY ACTION ON SUCH DISPUTE
26      SHALL BE FILED IN A FEDERAL OR STATE COURT LOCATED IN WACO,
        McLENNAN COUNTY, TEXAS, AND FRANCHISEE HEREBY IRREVOCABLY
27      SUBMITS TO THE JURISDICTION OF SUCH COURTS AND SPECIFICALLY
        WAIVES ANY OBJECTIONS IT MAY HAVE TO EITHER THE JURISDICTION OR
28      VENUE OF SUCH COURTS.

1   FA, 15(K) (emphasis in original).

2          In addition to the Franchise Agreement, the parties contemporaneously executed an "Addendum

3   to Franchise Agreement For Residents of California" ("Addendum").   The Addendum contains the

4   following relevant provisions:

5          7.      Section 14, <u>Dispute Resolution</u>, is amended by adding the following: "The
                   Franchise Agreement requires mediation and/or arbitration.   Mediation and/or
6                  arbitration will occur at a mutually convenient time and place with the costs
                   being borne equally by the parties.   If the parties cannot agree on a place for the
7                  mediation and/or arbitration, the meditation and/or arbitration will occur in
                   Texas.   This provision may not be enforceable under California law."
8
                                                    ***
9
           9.      Section 15.K, <u>Governing Law and Jurisdiction</u>, is amended by addition the
10                 following: "This provision may not be enforceable under California law."

11         Mr. Roberts alleges that Synergistic failed to meet its obligations under the Franchise Agreement

12  in a number of ways.   Mr. Roberts claims that Synergistic failed adequately to train him and his staff in

13  marketing, managerial and technical skills, and failed to provide a "System" as promised.   Mr. Roberts

14  contends that Synergistic failed to provide ongoing support to Mr. Roberts and failed to provide an

15  effective promotion and advertising effort that would benefit him.   Compl. ¶37.   In addition, Mr. Roberts

16  contends that about one month after signing the Franchise Agreement, he learned from the CLB that he

17  could not use Mr. Mock's CLB license for flat glass legally.   In response, defendants, including Mr.

18  Mock and Mark Dawson, advised Mr. Roberts on ways to evade the California law. Compl. ¶¶22-26.

19         Mr. Roberts initiated this action against defendants on September 30, 2008 in the Superior Court

20  of the State of California, County of Fresno.   Mr. Roberts' complaint asserts six causes of action against

21  defendants: (1) breach of contract (against Synergistic only); (2) negligent misrepresentation; (3) fraud;

22  (4) violation of California's Consumer Legal Remedies Act; (5) violation of California's franchise law

23  (against Synergistic only); and (6) declaratory relief.   Dwyer removed the action to this Court on

24  September 15, 2009, based on diversity of citizenship jurisdiction, 28 U.S.C. §1332.   Defendants moved

25  to compel arbitration and to dismiss on September 21, 2009.   Mr. Roberts opposed the motions on

26  October 2, 2009.   Defendants replied on October 13, 2009.   This Court found these motions suitable for

27  decision without a hearing, vacated the October 20, 2009 hearings pursuant to Local Rule 78-230(h),

28  and issues the following order.

                                                     4

**DISCUSSION**

**I.     Dwyer's Motion to Dismiss for Lack of Personal Jurisdiction**

     **A.     Standard of Review**

Dwyer contends that this Court lacks personal jurisdiction over Dwyer INC and Dwyer LLC, and moves to dismiss this action against them pursuant to Fed. R. Civ. P. 12(b)(2).   Dwyer submits undisputed evidence that Dwyer INC and Dwyer LLC are foreign corporations, as they are incorporated under the laws of the state of Delaware and both corporations have their principal place of business in Texas.   Declaration of Parker Pieri ("Pieri Decl.") ¶¶ 2-3.

Fed. R. Civ. P. 12(b)(2) empowers a defendant to challenge a complaint "for lack of jurisdiction over the person." A district court's determination whether to exercise personal jurisdiction is a question of law. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).   Although defendant is the moving party on the motion to dismiss, plaintiff is the party who invoked the court's jurisdiction. Therefore, plaintiff bears the burden of proof on the necessary jurisdictional facts; e.g., the existence of "minimum contacts" between defendant and the forum state. *Id.*

When defendant's motion to dismiss is made as its initial response and the court decides the motion without conducting an evidentiary hearing, plaintiff need only make a prima facie showing that personal jurisdiction exists. *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995). A "prima facie" showing means that plaintiff has produced admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. *See Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).   The complaint's uncontroverted factual allegations must be accepted as true, and any factual conflicts in the parties' declarations must be resolved in plaintiff's favor. *Id.* To defeat plaintiff's prima facie showing of jurisdiction on a Fed. R. Civ. P. 12(b)(2) motion, defendants must demonstrate the presence of other considerations that would render personal jurisdiction unreasonable. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

The Court considers both state and federal law in a personal jurisdiction challenge.   California's long-arm statute authorizes the exercise of personal jurisdiction on any basis not inconsistent with the state or federal constitution. Cal. Code Civ. Proc. §410.10.   As to federal law, "[e]xercise of *in personam*

1   jurisdiction over an out-of-state defendant is limited by the Due Process Clause of the Fourteenth

2   Amendment." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168-69 (9th Cir. 2006) (citing

3   *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984)).   Based on

4   considerations of Due Process and California's long-arm statute, two recognized bases exist for personal

5   jurisdiction over nonresident defendants: (1) "general jurisdiction" which arises when a defendant's

6   contacts with the forum state are so pervasive as to justify the exercise of jurisdiction over the person

7   in all matters; and (2) "specific" or "limited" jurisdiction which arises out of the defendant's contacts

8   with the forum giving rise to the subject of the litigation.  *Helicopteros Nacionales*, 466 U.S. at 414.

9   Absent a traditional basis for jurisdiction (presence, domicile or consent), due process requires that the

10  defendant have "certain minimum contacts with (the forum state) such that the maintenance of the suit

11  does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v.*

12  *Washington*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945).

13  **B.     Parties' Arguments**

14          Dwyer claims that this Court lacks both general and limited personal jurisdiction over Dwyer

15  INC and Dwyer LLC.  As to general jurisdiction, Dwyer contends that Dwyer INC and Dwyer LLC have

16  no contacts with California.  Dwyer points out that Dwyer INC and Dwyer LLC have no offices or

17  employees in California, employees do not travel to California for the purpose of conducting business,

18  neither Dwyer INC nor Dwyer LLC are registered to conduct business in California, and neither has an

19  agent for service of process in California.  Pieri Decl. ¶¶2-3, 6, 8-9.  As to limited jurisdiction, Dwyer

20  maintains that its contacts with Mr. Roberts occurred outside of California–in either Las Vegas, Nevada

21  or Waco, Texas.  Dwyer concludes that this action should be dismissed for lack of personal jurisdiction.

22          Mr. Roberts argues that both general and limited personal jurisdiction exist over all defendants.

23  Mr. Roberts declares that as early as April 2005, Mr. Baker contacted him by telephone to recruit him

24  to become a Glass Doctor franchisee.  Declaration of Kenneth E. Roberts ("Roberts Decl.") ¶6.  At the

25  time, Mr. Baker contacted Mr. Roberts, he lived and worked in Fresno County, California.  *Id*.  Mr.

26  Baker told Mr. Roberts that he worked for both Synergistic and Dwyer.  *Id*.  Mr. Baker called Mr.

27  Roberts multiple times, and sent multiple emails, from April through July 2005, when Mr. Baker invited

28  Mr. Roberts to attend the Las Vegas conference.  *Id*.  Moreover, Mr. Roberts points out that his Glass

6

1   Doctor franchise was located in Fresno County, he signed the Franchise Agreement in Fresno County,

2   and he paid the weekly Franchise Service Fee due under the Franchise Agreement by wire transfer

3   originating from his Bank of America branch in the City of Kerman, Fresno County, California.  Roberts

4   Decl. ¶¶22-24.

5           **C.      General Jurisdiction**

6           The nature and extent of the contacts, not a mechanical checklist, determines whether defendant's

7   activities are "substantial" or "continuous and systematic." Longevity, continuity, volume, economic

8   impact, physical presence, and integration into the state's regulatory or economic markets are among the

9   indicia of such a presence. *Tuazon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163, 1172 (9th Cir. 2006).

10  For general (unlimited) jurisdiction, a higher level of "contacts" with the forum state is required to

11  support local jurisdiction. *Data Disc, Inc. v. Systems Technology Assocs., Inc*., 557 F.2d 1280, 1287 (9th

12  Cir. 1977).  This broad basis for jurisdiction is usually limited to large companies doing a large amount

13  of business locally on a regular basis.  Thus, to assert general personal jurisdiction over a defendant, that

14  "defendant must not only step through the [jurisdictional] door, it must also sit down and make itself at

15  home." *Tuazon*, 433 F.3d at 1169 (citing *Glencore Grain Rotterdamn B.V. v. Shivnath Rai Harnarain*

16  *Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002)).

17          The evidence of "systematic" contacts in this action is either unrelated to Dwyer or took place

18  outside of California.  First, Mr. Roberts contends that "the evidence gathered thus far suggests that

19  Synergistic routinely sends its operatives to churches and other community organizations in California

20  in an effort to recruit new franchise [sic] for their Glass Doctor, Mr. Rooter, Mr. Appliance, and Mr.

21  Electric franchises." Roberts' Opposition, 6.  This unsupported assertion about *Synergistic's* contacts

22  in the forum state fails to establish a prima facie showing of personal jurisdiction over Dwyer.  Second,

23  Mr. Roberts asserts that "the evidence suggests that agents and representatives from both entities were

24  involved in the training programs and related conferences (like those which Roberts attended in Las

25  Vegas and Waco, Texas)."  Roberts' Opposition, 6 (emphasis in original).  Dwyer's participation in a

26  Las Vegas, Nevada conference and a Waco, Texas training, however, fail to support Mr. Roberts'

27  assertion that Dwyer had systematic contacts with California.  Thus, Mr. Roberts failed to carry his

28  burden that general jurisdiction exists over Dwyer.

**D.     Limited Jurisdiction**

Without general jurisdiction, the Court next considers whether it has "specific" or "limited" jurisdiction over Dwyer.  Limited jurisdiction arises from a defendants contacts with the forum state that give rise to the subject of the action.  The Ninth Circuit uses a three-part test to determine whether the district court may exercise specific jurisdiction over a nonresident defendant:

(a)     The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections;

(b)     The claim must be one which arises out of or results from the defendant's forum-related activities, and

(c)     Exercise of jurisdiction must be reasonable.

*Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  The Court evaluates each requirement of the three part test.

**(a)     Purposeful availment**

The "purposeful availment" requirement "ensures that a defendant will not be hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person."  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 379 F.3d 1120, 1129 (9th Cir. 2004).  As to a defendant's purposefully directed activities, the Ninth Circuit explained in *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988):

Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff.  In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business with the forum state.

The requirement that "conduct is expressly aimed" at the forum state is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."  *Menken v. Emm*, 503 F.3d 1050, 1059 (9th Cir. 2007) (applying the "effects test" to an action rooted in tort).

Dwyer argues that there is no evidence that Dwyer INC or Dwyer LLC availed themselves of the privilege of conducting activities in the state of California as they have no contacts in California.  Dwyer's position, however, ignores Mr. Roberts' undisputed allegation that Mr. Baker, an agent of both

Dwyer and Synergistic, called Mr. Roberts on the telephone and exchanged emails with Mr. Roberts while Mr. Roberts lived in Fresno County, California . Mr. Baker contacted Mr. Roberts in California for the express purpose of recruiting Mr. Roberts to become a Glass Doctor franchisee with a franchise territory in Fresno County, California. Dwyer, through Mr. Baker's multiple solicitous contacts with Mr. Roberts in California, performed affirmative conduct that promotes the transaction of business in California. Moreover, because Mr. Roberts was based in California, the harm alleged by Mr. Roberts was likely to be suffered in California. Accordingly, Dwyer's activities satisfy the purposeful availment prong of the limited personal jurisdiction test.

**(b)      Claim Arises out of Activities in California**

Specific jurisdiction limits jurisdiction to causes of action arising out of or related to the nonresident's forum-related activities. "In a specific jurisdiction inquiry," the court considers "the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts." *Yahoo! Inc.*, 433 F.3d at 1210. A "but for" test is used for determining whether the claim "arises out of" the nonresident's forum-related activities. *See, Menken*, 503 F.3d at 1059. If plaintiff would not have suffered loss "but for" defendant's in-state activities, this element is satisfied. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). A claim may arise out of in-state activities even if the defendant's contacts with the forum are not extensive. A "single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state." *Menken*, 503 F.3d at 1059 (quoting *Yahoo! Inc.*, 433 F.3d at 1210).

Mr. Roberts' complaint asserts four causes of action against Dwyer: negligent misrepresentation; fraud; violation of California's Consumer Legal Remedies Act; and declaratory relief. Dwyer asserts that Mr. Roberts' claims against Dwyer INC and Dwyer LLC do not arise out of any activities in or contact with the state of California. Dwyer contends that all acts are alleged to have occurred in either Las Vegas or Texas. Mr. Roberts submits that his causes of action arise out of his interactions with Dwyer that began when Mr. Baker, an agent for Dwyer, contacted him in California and encouraged him to become a Glass Doctor franchisee.

Having considered the parties arguments, Mr. Roberts' allegations, and the causes of action, this Court finds that Mr. Roberts sustains his burden to establish that his causes of action against Dwyer arise

1    out of activities in California.   In his second cause of action against Dwyer for negligent

2    misrepresentation, for example, Mr. Roberts alleged that he was:

> solicited and encouraged to enter into the Franchise Agreement by Synergistic and Dwyer...Defendants...made representations to Roberts regarding the benefits of the franchise relationship, the merit of the Dwyer Group System, and the requirements to operate successfully as a Glass Doctor franchisee in California...at the times the representations were made, Synergistic and Dwyer Group should have known that the representations were false...Roberts relied on the representations...[and] Roberts was damaged.

7    Compl. ¶¶48-51.  Mr. Roberts similarly bases his third cause of action of fraud on, *inter alia*, allegations

8    stemming from the fact that he was "solicited and encouraged to enter into the Franchise Agreement by

9    Synergistic, Dwyer Group, and their agents and representatives." Compl. ¶54.  As Mr. Roberts' claims

10   arise from Mr. Baker's alleged solicitation of Mr. Roberts in California, this Court finds that Mr.

11   Roberts' claims against Dwyer arise directly from Dwyer's contacts with Mr. Roberts in California.

12   Accordingly, this prong is satisfied.

13                              **(c) Reasonableness**

14           If the plaintiff succeeds in satisfying both of the first two prongs, "the burden then shifts to the

15   defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."

16   *Menken v. Emm*, 503 F.3d at 1057.  A "highly realistic" approach is required to determine whether a

17   nonresident party is subject to local jurisdiction and it must appear that the exercise of jurisdiction by

18   local courts in the particular case would "comport with fair play and substantial justice." *Id.*  Turning

19   to reasonableness to exercise personal jurisdiction, the Court balances seven factors:

20           1.      The extent of defendant's purposeful interjection into the forum state;

21           2.      The burden on defendant of defending in the chosen forum;

22           3.      The extent of conflict with the sovereignty of defendant's state;

23           4.      The forum state's interest in adjudicating the dispute;

24           5.      The most efficient forum for judicial resolution of the dispute;

25           6.      The importance of the forum to plaintiff's interest in convenient and effective relief; and

26           7.      The existence of an alternative forum.

27   *Core-Vent Corp. v. Nobel Industries, A.B.*, 11 F.3d 1482, 1487 (9th Cir. 1993).  Though neither party

28   discussed these factors, the Court examines each factor below.

### *Purposeful Interjection*

This factor is co-extensive with the purposefully directed activities analysis discussed above. *Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981).  Here, Dwyer purposely interjected itself into California when its agent telephoned and emailed Mr. Roberts, a California resident, and solicited him to establish a franchise area in Fresno County, California. Though Mr. Roberts interacted with Dwyer in Nevada and Texas, as discussed more fully above, Dwyer purposefully recruited and encouraged Mr. Roberts to conduct business in California.  Accordingly, the Court considers this factor to weigh in favor of the reasonableness of jurisdiction.

### *Burden on Defendant*

This factor examines how difficult it will be for a defendant to travel to the forum state to defend itself:

> The law of personal jurisdiction, however, is asymmetrical.  The primary concern is for the burden on a defendant.  *See World-Wide Volkswagen, supra*, 444 U.S. at 292, 100 S.Ct. at 564.  If the burdens of trial are too great for a plaintiff, the plaintiff can decide not to sue or, perhaps, to sue elsewhere.  A defendant has no such luxury.  The burdens on a defendant are of particular significance if, as here, the defendant has done little to reach out to the forum state.

*Marina Salina Cruz,* 649 F.2d at 1272.  Dwyer has made no showing of any burden on it and does not argue that it would be a burden to defend this action in California.  Thus, this factor balances in favor of Mr. Roberts.

### *Conflict with Sovereignty of Aircraft Maintenance's State*

There is no argument as to any conflicts with any other sovereignty.  As such, this factor appears to balance in favor of Mr. Roberts.

### *Forum State's Interest*

California has an interest in providing effective means of redress for its residents who are damaged by alleged tortious conduct.  Thus, this factor favors Mr. Roberts.

### *Most Efficient Resolution*

"In evaluating this factor, we have looked primarily at where the witnesses and the evidence are likely to be located." *CoreVent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir.1993).  Here, presumably, the witnesses and evidence of the alleged tortious conduct will in California, Texas, and

1   perhaps Nevada.  Accordingly, this factor is neutral and does not favor either party.

2                    ***Convenience and Effective Relief for Plaintiff***

3          This Court is the more convenient and effective forum for plaintiff and most likely played a large

4   part in plaintiffs' filing the action here.  This factor favors Mr. Roberts.

5                          ***Existence of an Alternative Forum***

6          Mr. Roberts bears the burden of proving the unavailability of an alternative forum.  *Core-Vent*

7   *Corp.*, 11 F.3d at 1490.  No argument has been made on this element.  Thus, this factor favors Dwyer.

8                                   ***Conclusion***

9          On balance of the seven factors, Dwyer has not presented a compelling case that the exercise of

10  jurisdiction would be unreasonable. *See e.g., Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324

11  (9th Cir.1998) ("[W]e conclude that although some factors weigh in [defendant's] favor, he failed to

12  present a compelling case that the district court's exercise of jurisdiction in California would be

13  unreasonable.") Dwyer has not presented a compelling case that the exercise of jurisdiction would not

14  comport with fair play and substantial justice and would thus be unreasonable.  Accordingly, this Court

15  finds that it may exercise limited personal jurisdiction over Dwyer in this action.  Dwyer's Fed. R. Civ.

16  P. 12(b)(2)  motion to dismiss is denied.

17  **III.    Motions to Compel Arbitration**

18         **A.      The Federal Arbitration Act**

19         Defendants move to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §1, *et*

20  *seq*. ("FAA").   The FAA governs the enforcement of arbitration agreements involving interstate

21  commerce.  *E.E.O.C. v. Waffle House, Inc*., 534 U.S. 279 (2002).  The FAA permits "a party aggrieved

22  by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration

23  [to] petition any United States District Court...for an order directing that arbitration to proceed in the

24  manner provided for in [the arbitration] agreement." 9 U.S.C. §4.  An arbitration agreement "shall be

25  valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

26  of any contract."  9 U.S.C. §2.  Because Mr. Roberts signed the contract in California and ran his

27  franchise in California, this Court looks to California contract law to determine whether the arbitration

28  agreement is valid and enforceable.  *Circuit City v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002).

1    If a party fails to comply with the arbitration agreement, this Court will stay the proceedings and

2    issue an order to compel arbitration. 9 U.S.C. §§ 3, 4.  "The standard for demonstrating arbitrability is

3    not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA]

4    is phrased in mandatory terms." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th

5    Cir. 1991).  "[W]here a contract contains an arbitration clause, there is a presumption of arbitrability."

6    *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986).   Under

7    the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of

8    arbitration." *Three Ways Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1139 (9th Cir. 1991).

9    With these standards in mind, the Court turns to whether this Court may determine the issue of

10   arbitrability, whether an arbitration agreement exists between the parties and, if so, whether that

11   agreement is enforceable.

12         **B.       Determination of the Issue of Arbitrability**

13   The parties dispute whether the issue of arbitrability should be resolved by this Court or by an

14   arbitrator.  Defendants argue that an arbitrator, rather than the court, should determine whether the

15   parties are required to arbitrate this dispute.  Defendants rely on the terms of the Franchise Agreement

16   to argue that the parties agreed to arbitrate the dispute "including any Disputes as to whether arbitration

17   is allowed or required." FA, Section 14J.  In addition, Defendants rely on *Buckeye Check Cashing, Inc.*

18   *v. Cardegna*, 546 U.S. 440 (2006) and *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119-22 (9th Cir.

19   2007) to contend that arbitration must be referred to an arbitrator because the "crux" of Mr. Robert's

20   complaint is against the contract as a whole rather than the arbitration clause.  Mr. Roberts relies on

21   *Winter v. Window Fashions Professionals, Inc.*, 166 Cal. App. 4th 943 (2008) to argue that a challenge

22   to the arbitration clause must be decided by the court, rather than the arbitrator.  Having considered the

23   applicable provisions of the Franchise Agreement, the FAA and the case law, this Court finds that the

24   issue of arbitrability is properly decided by this Court.

25   In *Buckeye Check Cashing*, 546 U.S. at 444, the Supreme Court distinguished between two types

26   of challenges to the validity of arbitration agreements:

27         Challenges to the validity of arbitration agreements "upon such grounds as exist at law
           or in equity for the revocation of any contract" can be divided into two types. One type
28         challenges  specifically  the  validity  of   the  agreement  to  arbitrate  (challenging  the

13

1    agreement to arbitrate as void under California law insofar as it purported to cover claims
     brought under the state Franchise Investment Law). The other challenges the contract as
2    a whole, either on a ground that directly affects the entire agreement (e.g., the agreement
     was fraudulently induced), or on the ground that the illegality of one of the contract's
3    provisions renders the whole contract invalid.  Respondents' claim is of this second type.
     The crux of the complaint is that the contract as a whole (including its arbitration
4    provision) is rendered invalid by the usurious finance charge.

5    If the challenge is of the first type–a challenge to the validity of the arbitration clause itself–the court

6    decides the threshold question of enforceability of the arbitration provisions. *Id*. at 446.  If, on the other

7    hand, a party challenges "the validity of the contract as a whole, and not specifically to the arbitration

8    clause," the issue "must go to the arbitrator." *Id*. at 449.  To distinguish between the two types of

9    challenges, the Court applies the rule set forth in *Nagrampa v. MailCoups, Inc.*, 469 F3d 1257, 1264 (9th

10   Cir. 2006) (en banc): "When the crux of the complaint is not the invalidity of the contract as a whole,

11   but rather the arbitration provision itself, then the federal courts must decide whether the arbitration

12   provision is invalid and unenforceable under 9 U.S.C. §2."

13          This action presents the first type of challenge.  In his complaint, Mr. Roberts does not challenge

14   the validity of the contract as a whole.  Instead, Mr. Roberts seeks to enforce the validity of the contract

15   by asserting a breach of contract claim against Synergistic.  Mr. Roberts challenges the validity of the

16   arbitration clauses in opposition to Defendants' motion to compel arbitration.  Under nearly identical

17   facts, in *Winter*, 166 Cal. App. 4th 943, 947-48, the appellate court ruled that the trial court properly

18   determined the issue of arbitrability because "a court must still consider...a claim that the party resisting

19   arbitration never actually agreed to be bound...[when] respondents' challenge to the arbitration clause

20   was in response to appellants' petition to compel arbitration."   This rule was similarly applied in *Cox*,

21   533 F.3d 1114, the case relied upon by defendants.  In *Cox*, the United States Court of Appeals for the

22   Ninth Circuit summarized that "our case law makes clear that courts properly exercise jurisdiction over

23   claims raising (1) defenses existing at law or in equity for the revocation of (2) the arbitration clause

24   itself." 533 F.3d at 1120.  The court concluded that when a party "does not concede that he is bound by

25   the arbitration clause...but raises it as a defense to a motion to compel arbitration brought against him

26   in federal court...[then] the district court properly decide[s] the issue" of arbitrability." *Id*. at 1121.

27   Because Mr. Roberts' challenge is to the arbitration clause rather than the contract as a whole, this Court

28

1 | properly determines the issue of arbitrability.[2]

2 | **C.  Existence of Arbitration Agreement**

3 | The "first task of a court asked to compel arbitration of a dispute is to determine whether the

4 | parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473

5 | U.S. 614, 626 (1985).  The FAA "does not apply until the existence of an enforceable arbitration

6 | agreement is established under state law principles involving formation, revocation, and enforcement

7 | of contracts generally." *Cione v. Foresters Equity Servs.*, 58 Cal. App. 4th 625, 634 (1997).  Mr. Roberts

8 | contends that the arbitration clause in its entirety is invalid because there was no "meeting of the minds"

9 | between the parties.  Mr. Roberts claims that there was no "meeting of the minds" on the provisions

10 | modified by the following paragraphs included in the Addendum to the Franchise Agreement:

11 | 7.   Section 14, <u>Dispute Resolution</u>, is amended by adding the following: "The Franchise Agreement requires mediation and/or arbitration.  Mediation and/or

12 | arbitration will occur at a mutually convenient time and place with the costs being borne equally by the parties.  If the parties cannot agree on a place for the

13 | mediation and/or arbitration, the meditation and/or arbitration will occur in Texas.  This provision may not be enforceable under California law."

14 | ***

15 | 9.   Section 15.K, <u>Governing Law and Jurisdiction</u>, is amended by addition the following: "This provision may not be enforceable under California law."

16 | Mr. Roberts asserts that the last sentence of paragraph 7 of the Addendum refers to the entire Dispute

17 | Resolution procedure.

18 | Mr. Roberts relies on *Winter* for his position that the arbitration procedure is invalid based on

19 | these provisions.  In *Winter*, a franchisee sued a franchisor for fraud, rescission, and statutory violations.

20 | The franchise agreement between the parties included an arbitration agreement that, *inter alia*, specified

21 | the application of Texas law to any dispute and required the arbitration to take place in Texas.  In

22 | addition to the franchise agreement, and similar to the facts of this case, the franchisor provided an

23 | offering circular which stated that the choice of law and out-of-state forum clauses "may not be

24 | enforceable under California law." 166 Cal.App. 4th at 946.  In considering the enforceability of the

25 | arbitration agreement, the *Winter* court ruled that there was "no meeting of the minds" to form

26 |

27 | [2]For this reason, the Court is the proper forum to determine arbitrability despite the language of the Franchise Agreement that the parties would submit the issue of arbitrability to the arbitrator.  "Because the duty to arbitrate originates in a contractual agreement between the parties, a party cannot be compelled to arbitrate if an arbitration clause does not bind

28 | it at all." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1120 (9th Cir. 2008).

provisions of an arbitration agreement when, as here, a circular advised a franchisee that the provisions "may not be enforceable under California law." *Id*.

Defendants suggest that this Court sever any provisions of the arbitration agreement that are invalid and enforce the remainder of the arbitration provision of the Franchise Agreement. The parties agree that the language of paragraph 9 of the Addendum refers to the Governing Law and Jurisdiction provision of the Franchise Agreement. Defendants contend, however, that the language in paragraph 7 of the Addendum refers only to the forum selection clause and does not refer to the arbitration provision in its entirety. Defendants assert that language is a reference to section 20040.5 of the California Franchise Relations Act, which provides: "A provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state." Thus, Defendants argue that this Court should sever the forum selection, jurisdiction, and choice of law clauses and enforce the remainder of the arbitration clauses.

Defendants' position that Paragraph 7 of the Addendum refers only to the forum selection clause is consistent with federal and state cases that interpret similar provisions modifying franchise agreements. In *Nagrampa*, 469 F.3d at 1291, the offering circular contained the following language:

> The franchise agreement requires binding arbitration. The arbitration will occur at the offices of the American Arbitration Association nearest our home office. This provision may not be enforceable under California law.

The Ninth Circuit interpreted that provision to modify the forum selection language only. *See Id*. In *Laxmi Invs., LLC v. Golf USA*, 193 F.3d 1095 (9th Cir. 1999), the Ninth Circuit considered the following language to refer only to the forum selection clause within the arbitration section:

> The Franchise Agreement also requires binding arbitration. The arbitration will occur in Oklahoma County, State of Oklahoma . . . . This provision may not be enforceable under California law.

*Id*. at 1096, 1097. Similarly, the language of Paragraph 7 of the Addendum refers only to the forum selection clauses contained in the dispute resolution program.

The Court's conclusion is further supported by parties agreement as set forth in the Addendum. The Addendum, signed contemporaneously with the Franchise Agreement, provides:

> Notwithstanding anything in the Agreement, in the event of a conflict between the

> provisions of the Agreement and the provisions of this Addendum, the provisions of the Addendum shall control.  The parties agree that the Agreement remains fully effective in all respects except as specifically modified herein, and all the respective rights and obligations of the Franchisee and Franchisor remain as written unless modified herein.

According to this provision, the rights and obligations of the Franchise Agreement shall remain unless specifically modified by the Addendum.  Paragraph 7 of the Addendum amends Section 14 of the Franchise Agreement, which sets forth a detailed dispute resolution procedure between the franchisor and franchisee, including negotiations, mediation, and arbitration.  Rather than address the entirety of the dispute resolution procedure described in Section 14, the language of Paragraph 7 specifically mentions, and therefore modifies, the dispute resolution forum selection clauses within Section 14.  Two subsections within Section 14 address dispute resolution location.  Section 14(D) provides that "the parties shall make a good faith effort to select a mutually convenient location for mediation.  If the parties cannot timely agree on a mutually convenient location, this provision is subject to the jurisdiction specified in Section 15.K hereof."  Section 14(J) provides: "The place of arbitration shall be as mutually agreed upon between the parties; provided, however, if the parties cannot agree, this provision is subject to the jurisdiction provided in Section 15.K hereof."  Section 15(K) provides that the parties agree to the jurisdiction of the federal or state court located in Waco, Texas for disputes not subject to binding arbitration.  The specific language of paragraph 7 ("If the parties cannot agree on a place for the mediation and/or arbitration, the meditation and/or arbitration will occur in Texas.  This provision may not be enforceable under California law."), the conflict between that language and the language of Section 14(D) and Section 14(J), and the reference within Section 14 to Section 15(K) all support Defendants' position that Paragraph 7 modifies only the forum selection language within Section 14.[3]

Having determined that Paragraph 7 modifies only the forum selection clauses of the Franchise Agreement, this Court follows the holding of *Winter* to find that there was no "meeting of the minds"

---

[3]The Court's interpretation is further supported by California's rules of contract interpretation.  Under California law, contracts are to be interpreted to give effect to the mutual intention of the parties at the time of contracting. Cal. Civ. Code § 1638; *Waller v. Truck Ins. Exchange*, 11 Cal. 4th 1, 44 Cal. Rptr. 2d 370, 378, 900 P.2d 619 (1995). "[S]uch intent is to be inferred, if possible, solely from the written provisions of the contract[, Cal. Civ. Code] § 1639," read in their ordinary and popular sense, unless it appears the parties used the terms in some special sense. *AIU Ins. Co. v. FMC Corp.*, 274 Cal. Rptr. 820, 831 (1995). Thus, "if the meaning a layperson would ascribe to contract language is not ambiguous, [the court should] apply that meaning." *Id*.  Considering the Franchise Agreement and Addendum together, the mutual agreement of the parties was to modify only those provisions specifically amended in the Addendum and to keep intact all other provisions of the Franchise Agreement.

between the parties on the forum selection, choice of law, and jurisdiction clauses of the Franchise Agreement.  These conclusion is consistent with the cases relied upon by Defendants: *Laxmi*, 193 F.3d 1095 and *Bradley v. Harris Research Inc.*, 275 F.3d 884 (9th Cir. 2001).  In *Nagramapa*, 469 F.3d at 1290, the Ninth Circuit explained the holdings of *Laxmi* and *Bradley*:

> [W]here the franchise-offering circular contained language suggesting that the out-of-state forum selection and choice of law clauses may not be enforceable under California law, there was "no reasonable expectation that [the franchisee] had agreed to a forum other than California." *Laxmi Invs., LLC v. Golf USA*, 193 F.3d 1095, 1097 (9th Cir. 1999) (internal quotation marks omitted). We held in *Laxmi* that, regardless of whether the California statute limiting venue to California for franchise disputes, Cal. Bus. & Prof. Code § 20040.5, was preempted by the FAA, the franchisor could not include such misleading language in the offering circular and then later take the position that California law will not control. "A contrary approach would unnecessarily undercut the California public policy which requires honest disclosures to franchisees." *Laxmi*, 193 F.3d at 1098; *see also Bradley v. Harris Research Inc.*, 275 F.3d 884, 891 (9th Cir. 2001) (holding that section 20040.5 is preempted by the FAA, but distinguishing *Laxmi* because, in *Laxmi*, "there was no evidence that the franchisor 'ever indicated that it would insist upon an out-of-state forum despite the contravening California law' referred to in the [circular], and the franchisee had no reason to expect that it had agreed to an out-of-state forum," indicating that "there was no 'meeting of the minds on the forum selection provision' " (quoting *Laxmi*, 193 F.3d at 1097)).

As in *Laxmi* and *Winter*, Mr. Roberts had no reasonable expectation that the arbitration would take place in Texas in the event that the parties could not agree on a location based on the language of Paragraph 7.  In addition, Mr. Roberts had no reasonable expectation that he would be bound by the jurisdiction and choice of law provision of Section 15(K).  *See Winter*, 166 Cal. App. 4th at 950 ("Similarly, there was no meeting of the minds as to the choice of law provision [where franchisee was] advised that the franchise Agreement's requirement that Texas law be applied 'may not be enforceable under California law.'").  Because there was no meeting of the minds on this provision, they did not become part of the agreement between the parties and they are invalid.

The Court notes that the *Bradley* holding is distinguishable in this instance.  In *Bradley*, the parties did not sign an Addendum to modify the language of the Franchise Agreement.  In addition, the circular provided by the franchisor to inform the franchisee that the forum selection clause "may not be enforceable under California law" was not in evidence.  Accordingly, the court could not consider the modifying language.  Thus, the question for the court to consider was whether the California law applied by default to the parties' franchise agreement absent specific language in the agreement.   Here, as in *Laxmi*, the plaintiff does not rely on the default language of the California state law.  Rather, the plaintiff

1  asserts that there was no agreement as to the forum based on the Franchise Agreement and the language

2  contained in the Addendum.  Accordingly, the Bradley holding is distinguishable and inapplicable in this

3  action. *See Laxmi*, 193 F.3d at 1097 ("[E]ven if California's statutory requirement of a California forum

4  is preempted by the FAA, the parties in this case never agreed to a forum outside California.").

5       Although there was no meeting of the minds on the forum, jurisdiction, and choice of law clauses

6  of the arbitration agreement, they parties did agree to a dispute resolution program as described in

7  Section 14 of the Franchise Agreement.  The failure to agree on a forum selection clause does not renter

8  the entire arbitration provision unenforceable. *See Laxmi*, 193 F.3d at 1098 (determining that there was

9  no meeting of the minds on forum selection clause but remanding action for entry of an order that

10  arbitration shall proceed).  According to the parties' agreement, in the Addendum all rights and

11  obligations not specifically modified shall remain effective.

12       **D.**     **Enforceability of Arbitration Agreement**

13       Next, the Court determines whether the arbitration agreement at issue is enforceable under

14  section 2 of the FAA, 9 U.S.C. §2.  *Ticknor v. Choice Hotels, Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir.

15  2001).  "Generally applicable contract defenses, such as fraud, duress, or unconscionability" arising

16  under state law, are applied to determine whether an arbitration cause is valid and enforceable. *Doctor's*

17  *Assocs. v. Casarotto*, 517 U.S. 681, 687 (2000).  "Federal courts sitting in diversity look to the law of

18  the forum state in making a choice of law determination." *Ticknor*, 265 F.3d 931, 937 (citing *Sparling*

19  *v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 641 (9th Cir. 1988)).  Thus, this Court relies on California

20  contract law to determine the issues raised in this action.

21       Mr. Roberts contends that the arbitration agreement is unenforceable because it is

22  unconscionable.  "If a contract is unconscionable, under California law courts may refuse to enforce it."

23  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).  To be unenforceable, the

24  arbitration clause must be both procedurally and substantively unconscionable, but not necessarily to the

25  same degree. *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003).  The Court considers each separately.

26       **1.**     **Procedural Unconscionability**

27       Procedural unconscionability "concerns the manner in which the contract was negotiated and the

28  circumstances of the parties at that time." *Kinney v. United Healthcare Servs*., Inc., 70 Cal. App. 4th

19

1322, 1329 (1999).  Procedural unconscionability requires either of two factors: oppression or surprise. *Stirlen v. Supercuts, Inc*., 51 Cal. App. 4th 1519 (1997).  Oppression "arises from an inequality in bargaining power which results in no real negotiation and an absence of meaningful choice." *Id.* at 1531.

Mr. Roberts establishes that the arbitration provision within the Franchise Agreement "is procedurally unconscionable because it is a contract of adhesion: a standard-form contract, drafted by the party with superior bargaining power, which relegates to the other party the option of either adhering to its terms without modification or rejecting the contract entirely." *Circuit City Stores v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002) (citing *Stirlen*, 51 Cal. App. 4th. at 1533-34 (concluding that contracts of adhesion are procedurally unconscionable)).  Defendants, franchisors, had superior bargaining power over Mr. Roberts.  Mr. Roberts declares that the Franchise Agreement was presented to his as a "take it or leave it" proposition, without the ability to negotiate its terms.  California courts routinely rule that "take it or leave it" provisions within an adhesion contract are procedurally unconscionable.  *Ingle*, 328 F.3d at 1171 (9th Cir. 2003) (applying California law to reject adhesion contract with arbitration condition precedent as unconscionable); *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002) ("When the weaker party is presented the clause and told to "take it or leave it" without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present."); *Armendariz* v. *Found. Health Psychcare Servs*., 24 Cal. 4th 83, 115 (2000) (preemployment arbitration contract procedurally unconscionable because "it was imposed on employees as a condition of employment and there was no opportunity to negotiate.").  In addition, courts recognize that franchise agreements have characteristics of adhesion contracts.  *See Independent Assoc. of Mailbox Center Owners, Inc*., 133 Cal. App. 4th 396 407 (2005).  Having found the arbitration agreement to be procedurally unconscionable, the Court considers next whether the agreement is substantively unconscionable.

### 2.    Substantive Unconscionability

Substantive unconscionability focuses "on overly harsh or one-sided results." *Armendariz*, 24 Cal. 4th at 114.   An arbitration clause is substantively unconscionable if  "the terms of the agreement...are so one-sided as to shock the conscience." *Kinney*, 70 Cal. App. 4th at 1329.  California courts "look beyond facial neutrality and examine the actual effects of the challenged provision." *Ting*,

1  319 F.3d at 1149.

2      Mr. Roberts claims that the arbitration agreement "contains provisions that courts have deemed

3  unconscionable because they are one-sided." Opp. at 14. After listing the provisions he challenges, Mr.

4  Roberts concludes: "Clearly, the agreement is unconscionably one-sided; it essentially grants Defendants

5  the right to do whatever they want, while substantially limited the relief available to Roberts." Opp. at

6  16-17. Despite the wealth of federal and state cases that interpret the panoply of arbitration provisions,

7  Mr. Roberts cites not a single case to support his broadly sweeping suggestion that multiple provisions

8  of the arbitration agreement is unenforceable. Without authority or analysis to support his position, Mr.

9  Roberts fails to sustain his burden that the arbitration clause is unenforceable. *See Rodriguez de Quijas*

10  *v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989) (a party seeking to avoid arbitration has

11  the burden of showing that an arbitration clause is unenforceable). Thus, while an arbitration agreement

12  must contain a "'modicum of bilaterality" as required by California contract law," *Armendariz*, 24 Cal.

13  4th at 117-118, Mr. Roberts fails to establish that the arbitration agreement is unenforceable.

14      **3.**    **Conclusion**

15      Both procedural and substantive unconscionability must be present for a court to refuse to

16  enforce an arbitration agreement under the doctrine of unconscionability. *Armendariz*, 24 Cal. 4th at 114.

17  As discussed more fully above, this Court finds that the contract is procedurally unconscionable, because

18  it is an adhesion contract. This Court finds further that Mr. Roberts failed to sustain his burden to

19  establish that the arbitration agreement is substantively unconscionable. Additionally, the Court

20  considers the federal and state policy in favor of arbitration. *Three Ways Mun. Water Dist*, 925 F.2d

21  at 1139, and the mandatory terms of the FAA. *Republic of Nicaragua*, 937 F.2d at 475. "[W]here a

22  contract contains an arbitration clause, there is a presumption of arbitrability." *AT&T Technologies, Inc.*

23  *v. Communications Workers of America*, 475 U.S. 643, 650 (1986). Under the FAA, "any doubts

24  concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Three Ways Mun.*

25  *Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1139 (9th Cir. 1991). For these reasons, this Court

26  grants Defendants motion to compel the valid provisions of the arbitration agreement contained in

27  Section 14 of the Franchise Agreement.

28  ///

## CONCLUSION AND ORDER

For the foregoing reasons, this Court:

        1.      DENIES Dwyer's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2);

        2.      GRANTS in part Defendants' motions to compel arbitration, pursuant to 9 U.S.C. §4;

        3.      STRIKES the forum selection, jurisdiction, and choice of law provisions of the Franchise Agreement and Addendum, for lack of meeting of the minds;

        4.      STAYS the proceedings, pursuant to 9 U.S.C. §3;

        5.      ORDERS the parties to meet and confer and to attempt in good faith to reach a mutually agreeable location for the arbitration.  If, after a good faith effort, the parties are unable to reach agreement as to the location of the arbitration, the parties may petition for this Court to make a decision on the location of the arbitration; and

        6.      ORDERS the parties, no later than January 28, 2010, to file a joint status report with this Court.

IT IS SO ORDERED.

**Dated:**   **October 30, 2009**               **/s/ Lawrence J. O'Neill**
                                        UNITED STATES DISTRICT JUDGE